UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ADOBE SYSTEMS, INC.,

        Plaintiff,

  v.

GARY TILLEY, ET AL.,

        Defendants.
_____/

No. C-09-01085 PJH  (JCS)

**REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT** [Docket No. 23]

## I.  INTRODUCTION

In this copyright and trademark infringement action, Plaintiff Adobe Systems, Inc. ("Adobe") brings a Motion for Entry of Default Judgment ("Motion") in which it seeks default judgment, an award of statutory damages, post-judgment interest and a permanent injunction against Defendants Gary Tilley and Denise Black. A hearing on the Motion was held on Friday, December 4, 2009 at 1:30 p.m. In addition, Adobe submitted supplemental materials on December 10, 2009. For the reasons stated below, it is recommended that the Motion be GRANTED.

## II.  BACKGROUND

Adobe is a corporation organized under the laws of the state of Delaware with its principal place of business in San Jose, California. First Amended Complaint ("FAC"), ¶ 7. "Adobe is a global leader in developing and distributing innovative computer software." FAC, ¶ 2. It owns the copyrights to titles that include Acrobat, Create Suite, Dreamweaver, Flash, Illustrator, Pagemaker, Photoshop and Shockwave. FAC, ¶ 8 & Ex. A (non-exhaustive list of Adobe copyright registrations). Adobe's products bear its trademarks, which include Adobe, Acrobat, Creative Suite,

Dreamweaver, Flash Illustrator, Macromedia, Pagemaker, Photoshop, Postscrip, Reader and Shockwave. FAC, ¶ 9.

Adobe filed its initial complaint in this action on March 11, 2009, naming Gary Tilley and Does 1-10 as defendants. On May 27, 2009, Adobe filed an amended complaint to add Denise Black as a defendant. In the amended complaint, Adobe alleges that Gary Tilley is an individual who resides in Ararat, North Carolina and does business on Amazon.com under the seller name "dsupply." FAC, ¶ 12. Adobe alleges that Denise Black is an individual who resides in Walnut Cove, North Carolina and also does business on Amazon.com under the seller name "dsupply." FAC, ¶ 13. Adobe alleges that Defendants sell pirated versions of Adobe's products, including at least Adobe Photoshop CS3 Extended, on Amazon.com, and use images that are confusingly similar or identical to Adobe's trademarks. FAC, ¶¶ 15-17. Allegedly, Defendants have also obtained a substantial feedback rating through Amazon.com's feedback system, which further confuses consumers and aids in even wider distribution of the unauthorized copies of Adobe's software. FAC, ¶ 18. Based on these allegations, Adobe asserts two claims against Defendants, for Copyright Infringement (Claim One) and Trademark Infringement (Claim Two). Adobe seeks actual damages and a permanent injunction in the First Amended Complaint, as well as an award of attorneys' fees.

The original complaint was served on Defendant Gary Tilley on April 2, 2009. Declaration of Annie S. Wang ("Wang Decl."), ¶ 2. The First Amended Complaint was served on both defendants on May 29, 2009. *Id.* Although Defendant Denise Black exchanged emails with Plaintiff's counsel, neither defendant filed a responsive pleading or otherwise appeared in this action. *Id.*, ¶ 4. The Court entered default under Fed.R. Civ.P. 55(a) against both defendants on September 2, 2009. Adobe now brings a motion for entry of default judgment.

In the Motion, Adobe seeks statutory damages under Section 1117(c) of the Lanham Act, requesting a total of $250,000.00 for willful counterfeiting of five trademarks, that is, $50,000.00 for each infringed trademarks, as well as post-judgment interest under 28 U.S.C. § 1961(a). Adobe also seeks entry of a permanent injunction prohibiting Defendants from infringing Adobe's copyrights

and trademarks.[1]  In support of the Motion, Adobe provides a declaration by the owner and principal of Effective Piracy Enforcement documenting a purchase by one of its employees, via Amazon.com, of a product called "Adobe Photoshop CS3 Extended [Old Version] (DVD-ROM)." *See* Declaration of Christopher D. Johnson ("Johnson Decl."), ¶¶ 3-6.  According to Mr. Johnson, the order was placed on October 21, 2008.  *Id*., ¶ 3; *see also* Ex. A (Amazon.com web page showing product and reflecting 3 lifetime ratings for the seller dsupply).  On October 27, 2008, the employee received a package showing the return address as "Gary Tilley, PO Box 46, Ararat NC 27007-0046."  *Id*., ¶ 5 & Ex. C.  The package contained one disc labeled "Adobe Photoshop CS3" and another labeled "Adobe Creative Suite 3."  *Id*., ¶ 6 & Ex. D.

In its supplemental declaration, filed after the hearing, Plaintiff provides evidence that Denise Black was listed as the owner of the Amazon.com seller "D Supply."  *See* Supplemental Declaration and Exhibits in Support of Motion for Default Judgment ("Supp. Decl.").

### III.   ANALYSIS

#### A.   Legal Standard Regarding Entry of Default Judgment

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b).  A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).  The district court has discretion in its decision to grant or deny relief upon an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956) (affirming district court's denial of default judgment).  The court may consider the following factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)

---

[1] Although the proposed order submitted with Plaintiff's default judgment motion also asks that the Court include a provision requiring that Defendants turn over all infringing products in their possession for destruction, Plaintiff stated at oral argument that it had no evidence as to whether Defendants have any such products and stipulated that this provision could be omitted from the injunction.

> the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d). On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). As a result, where the allegations in a complaint are not "well-pleaded," liability is not established by virtue of the defendant's default and default judgment should not be entered. *Id.*

Damages or other forms of relief awarded are constrained by the rule that judgment by default "must not be different in kind from, or exceed in amount, what is demanded in the [complaint]." Fed. R. Civ. P. 54(c).

**B.    *Eitel* Factors**

### 1.    Excusable Neglect

There is no evidence in the record that Defendants' failure to appear was a result of excusable neglect. Rather, Defendants failed to appear after the complaint in this action was personally served upon them, indicating that their failure to appear was willful. This factor therefore favors entry of default judgment.

### 2.    Possibility of Prejudice to Plaintiff

To the extent that Defendants have failed to appear in this action, Adobe will be left without a remedy if default judgment is not entered in its favor. Therefore, this factor favors entry of default judgment.

### 3.    Allegations and Substantive Merits of Claims

Because the allegations of the complaint are deemed true by virtue of Defendants' default, the Court considers the merits and the allegations of the complaint together.

#### a.    Copyright Infringement

A prima facie case of direct copyright infringement requires that a plaintiff establish: (1) ownership of the allegedly infringed material; and (2) that the alleged infringer violated at least one exclusive right granted to the copyright holders under 17 U.S.C. § 106. *See Marder v. Lopez*, 450 F.3d 445, 453 (9th Cir. 2006); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Section 106, in turn, gives copyright owners the exclusive right to authorize the reproduction of copyrighted work. 17 U.S.C. § 106(1). Here, Adobe has alleged that it owns the copyright to its software products, including the product that Defendants have allegedly copied without authorization, Adobe Photoshop CS3 Extended. Adobe also included with its complaint a list of its copyright registrations that includes the same product. *See* FAC, Ex. A at 3. Therefore, Adobe has satisfied both elements of a copyright claim.

### b. Trademark Infringement

To prevail on a trademark infringement claim, a holder of a registered service mark must show that another person is using: (1) any reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive. 15 U.S.C. § 1114(1)(a); *Century 21 Real Estate Corp. v. Sanlin,* 846 F.2d 1175, 1178 (9th Cir. 1988). Neither intent nor actual confusion are necessary to establishing a likelihood of confusion. *Id.*

Here, Adobe has alleged that it is the owner of a number of trademarks that are registered with the United States Patent and Trademark Office ("PTO"), that Defendants used the marks to sell pirated copies of Adobe's software over the internet and that as a result of their activities, consumers were duped into believing they had purchase authentic Adobe software. In addition, Adobe presented the trademark registrations for a number of its marks in support of the Motion. *See* Declaration of Chris Stickle ("Stickle Decl."), ¶ 3 & Ex. E. These allegations and evidence are sufficient to establish that Defendants infringed upon plaintiff's trademark. *See Adobe Systems Incorporated v. Marmoletos*, 2009 WL 1034143 (N.D. Cal. April 16, 2009) (J. Alsup)(holding that where owner of trademarks alleged that defendants had distributed counterfeited versions of its software products on the Internet, claims were sufficient to establish liability on default judgment motion); *Adobe Systems,*

*Inc. v. Brooks*, 2009 WL 593343 (N.D. Cal. Mar. 5 2009) (J. Whyte) (same); *Adobe Systems, Inc. v. Taveira*, 2009 WL 506861 (N.D. Cal. Feb. 27, 2009) (J. Hamilton) (same); *Microsoft Corp. v. Ricketts*, 2007 WL 1520965 (N.D.Cal. May 24, 2007) (J. Alsup) (same). Finally, at oral argument, Plaintiff's counsel identified the five marks it alleges were infringed by the sale of the product that was sold to Plaintiff, namely, A, A Adobe, Photoshop, Adobe Photoshop and Creative Suite, all of which can be seen in Exhibit D to Plaintiff's default judgment motion.

### 4. Conclusion

Based on consideration of the factors discussed above, it is recommended that default judgment be entered against Defendants on both the copyright and trademark infringement claims.

### C. Statutory Damages

Under the Lanham Act, a plaintiff may elect to recover an award of statutory damages for actions involving the use of a counterfeit mark at any time before final judgment is entered. 15 U.S.C. § 1117(c). In particular, section 1117(c) provides for the following statutory damages;

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). Willful infringement means "with knowledge that the defendant's conduct constitutes . . . infringement." *Peer Int'l Corp. v. Pausa Records, Inc*., 909 F.2d 1332, 1335 n. 2 (9th Cir.1990) (addressing willful infringement under Copyright Act); *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (holding that "courts faced with determining statutory damages under the Trademark Act [may] analogize[] to the body of case law interpreting a similar provision in the Copyright Act). Willfulness can also be inferred from a defendant's failure to defend. *Philip Morris USA, Inc.Prods., Inc.*, 219 F.R.D. at 500. The Court is given broad discretion to determine the amount of statutory damages to be awarded. *Peer Intern. Corp.*, 909 F.2d. at 1336 (9th Cir. 1990).

Here, Adobe asserts that Defendants' conduct was willful and therefore, its request for $250,000 in statutory damages – which is significantly less than the maximum award allowable in

6

cases of willful counterfeiting – is reasonable.  In determining the appropriate amount of statutory damages for trademark infringement, the Court finds instructive decisions of other judges in this district who have addressed similar requests.  In particular, courts in this district have considered whether the amount of damages requested bears or "plausible relationship" to Plaintiff's actual damages.  *See Rickets*, 2007 WL 1520965 at * 4 (citing *Chanel, Inc. v. Doan*, 2007 WL 781976, *5 (N.D.Cal. Mar.13, 2007) (Walker, J.) (granting plaintiff's request for statutory damages on default judgment where plaintiff's request bore a plausible relationship to the defendant's profits from infringement)).

These courts have noted that while the plaintiff in a trademark or copyright infringement case is entitled to damages that will serve as a deterrent, it is not entitled a windfall.  *Id*.  Thus, in *Rickets*, the Court held that where the plaintiff had requested over three million dollars in statutory damages but had presented evidence that only three units of counterfeit software had been sold by the defendants, a more appropriate award of statutory damages was $1,000 for each trademark infringed and $1,500 for each copyright infringed.  Similarly, in *Brooks*, where Adobe requested a total of $250,000 for five infringed trademarks, that is, $50,000 per infringed trademark (as requested in this case), the court reduced the amount of statutory damages to $10,000 per infringed trademark on the basis that Adobe had presented evidence of only a single sale of the infringing software.  2009 WL 593343 at * 4.  In contrast, in *Taveira*, the court awarded $50,000 per trademark infringement where the complaint alleged that the defendants had made "thousands" of sales of the counterfeit software and the plaintiff also presented actual evidence that defendants had sold many copies of the counterfeit software and planned to continue selling counterfeit software for another six months.  2009 WL 506861 at * 6.

Here, the evidence and allegations, as well as Defendants' failure to appear in this action, are sufficient to establish willfulness.  On the other hand, in this case, as in *Brooks*, there is evidence of only one sale of counterfeit Adobe software.  Even if the feedback rating showing three lifelong ratings were sufficient to support an inference that Defendants had sold three units of infringing software, the Court concludes that an award of $50,000 per infringement would be a windfall.  Rather, it is recommended that Adobe be awarded $10,000 per trademark infringement, that is

7

$50,000 in statutory damages.

### D. Permanent Injunction

Under 17 U.S.C. 502(a), a court may enter an injunction against a defendant to prevent future copyright infringement. Likewise, injunctive relief is available to prevent future trademark infringement under the Lanham Act. 15 U.S.C. § 1116. In light of Defendants' past infringement and their failure to appear in this action, injunctive relief is warranted. Therefore, it is recommended that Adobe's request for a permanent injunction be GRANTED.

### E. Post-Judgment Interest

Pursuant to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Post-judgment interest under this section "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. . . the date of the judgment." Therefore, it is recommended that the Court GRANT Adobe's request for post-judgment interest.

## IV. CONCLUSION

It is recommended that the Court GRANT the Motion. Default judgment should be entered against both defendants. Adobe should be awarded statutory damages in the amount of $50,000, for which Defendants shall be jointly and severally liable, as well as post-judgment interest under 28 U.S.C. § 1961. Further, a permanent injunction should be entered against Defendants as follows:

> The Defendants and their agents, servants, employees and all persons in active concert and participation with them who receive actual notice of the injunction are hereby restrained and enjoined from:
>
> a) Infringing Plaintiff's Copyrights and Trademarks, either directly or contributorily, in any manner, including generally, but not limited to manufacturing, importing, distributing, advertising, selling and/or offering for sale any merchandise which features any of Plaintiff's Copyrights and Trademarks, and, specifically, importing, manufacturing, distributing, advertising, selling and/or offering for sale the Counterfeit Product or any other unauthorized products which picture, reproduce, copy or use the

likenesses of or bear a substantial similarity to any of Plaintiff's Copyrights and Trademarks;

b) Importing, manufacturing, distributing, advertising, selling and/or offering for sale in connection thereto any unauthorized promotional materials, labels, packaging or containers which picture, reproduce, copy or use the likenesses of or bear a confusing similarity to any of Plaintiff's Copyrights and Trademarks;

c) Engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead or deceive purchasers, the Defendants' customers and/or members of the public to believe, the actions of Defendants, the products sold by Defendants, or the Defendants themselves are connected with Plaintiff, are sponsored, approved or licensed by Plaintiff, or are affiliated with Plaintiff;

d) Affixing, applying, annexing or using in connection with the importation, manufacture, distribution, advertising, sale and/or offer for sale or other use of any goods or services, a false description or representation, including words or other symbols, tending to falsely describe or represent such goods as being those of Plaintiff.

Dated:   December 23, 2009

JOSEPH C. SPERO
United States Magistrate Judge